**Albert J. AMATUZIO and AMS/Air, Inc., Appellants,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, Respondent.**

No. C4–87–316.

Court of Appeals of Minnesota.

July 28, 1987.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, Robert H. Magie, III, Donovan, McCarthy, Crassweller & Magie, Duluth, for appellants.

Robert G. Haugen, Johnson & Lindberg, P.A., Minneapolis, for respondent.

Heard, considered and decided by LESLIE, P.J., and FOLEY and LANSING, JJ.

## OPINION

LANSING, Judge.

An experimental aircraft belonging to AMS/Air, Inc., was extensively damaged in a crash during the Reno, Nevada, National Championship Air Races. Albert Amatuzio and AMS/Air, Inc., brought an action to recover the face value of the policy, but the trial court found no coverage and granted summary judgment for the insurer. We reverse the summary judgment because the language of the insurance policy was ambiguous and must be construed in favor of coverage.

## FACTS

In 1983 Albert Amatuzio and AMS/Air, Inc. (AMS/Air), purchased an aircraft from Daniel Mortenson, an employee of AMS/Air. Mortenson had completed construction of the aircraft, a Rutan Model 68, in 1981 and insured it under a group policy issued to the International Aerobatics Club by United States Fire Insurance Company (U.S. Fire). AMS/Air purchased the aircraft for use in promoting its products, including aviation lubricants. The promotions involved demonstration flights and racing competition. Mortenson continued to pilot the aircraft after the purchase, and U.S. Fire agreed to continue Mortenson's insurance coverage in AMS/Air's name.

Mortenson was flying the Rutan on September 17, 1983, in a closed-course pylon race at the Reno, Nevada, National Championship Air Races when it crashed. In a closed-course pylon race, the aircraft fly six to ten laps around an oval course at heights from 35 to 400 feet above the ground. The Reno course was one mile in the straight-away and one-half mile at the ends, defined by 35–foot-high pylons.

Mortenson received only minor injuries in the crash, but the aircraft was extensively damaged. U.S. Fire denied coverage, stating the closed-course pylon race was not an event covered by the policy.

The policy excludes coverage for aircraft operation which requires a special permit or waiver from the Federal Aviation Administration (FAA), unless the policy is specifically endorsed to include such operation. AMS/Air's policy contained an endorsement for aerobatic flights, airshows or aerobatic competitions if these operations are in compliance with FAA regulations or permitted under a waiver. The specific language states:

> The coverages provided under this policy shall not apply while the aircraft is being operated for aerobatic flight, airshows or aerobatic competition unless such operation is in full compliance with the federal aviation regulations governing such uses —F.A.R. Part 91.71, or as may be amended by a certificate or waiver in accordance with the provision of F.A.R. 91.63.

The Reno Air Racing Association obtained an FAA Certificate of Waiver or Authorization under F.A.R. 91.63, 14 C.F.R. § 91.63 (1983). The certificate allowed noncompliance with four FAA regulations by participants in the air races: F.A.R. 91.70(a) Aircraft speed below 10,000 ft. MSL, 14 C.F.R. § 91.70(a); F.A.R. 91.71(c) Acrobatic flight within a control zone or Federal Airway, 14 C.F.R. § 91.71(c); F.A.R. 91.71(d) Acrobatic flight below an altitude of 1,500 feet above the surface, 14 C.F.R. § 91.71(d); and F.A.R. 91.79(b) Minimum safe altitudes; open air assembly of persons, 14 C.F.R. § 91.79(b).

The waiver certificate was in effect for the race in which the Rutan was damaged. However, the trial court determined there was no coverage because the policy endorsement for "aerobatic flight, airshow or aerobatic competition" does not include the activity of air racing. AMS/Air appeals, claiming the policy endorsement language is ambiguous and should be construed in favor of coverage.

## ISSUE

Is "air racing" included in the policy endorsement covering "aerobatic flight, airshows or aerobatic competition" when done in compliance with FAA regulations or under a waiver?

## ANALYSIS

The determination of coverage turns on the definition of "aerobatic flight, airshows

or aerobatic competition" in the policy endorsement. AMS/Air contends that these terms are capable of more than one meaning and do not effectively exclude the activity of air racing. U.S. Fire argues that the policy language is not ambiguous and excludes air racing.

Whether the language of an insurance contract is ambiguous is a question of law to be decided initially by the trial court. On appeal, the appellate court must decide whether the trial court was correct in finding or not finding ambiguity. *Columbia Heights Motors, Inc. v. Allstate Insurance Co.*, 275 N.W.2d 32, 34 (Minn.1979); *see also ICC Leasing Corp. v. Midwestern Machinery Co.*, 257 N.W.2d 551, 554 (Minn. 1977).

The test to be used in determining whether there is ambiguity in an insurance policy is what a reasonable person applying for this type of insurance would have understood the term to mean. *See Canadian Universal Insurance Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977). Courts in Minnesota have held that any term which is susceptible to more than one meaning is ambiguous. *Columbia Heights Motors* at 34; *see Quaderer v. Integrity Mutual Insurance Co.*, 263 Minn. 383, 388, 116 N.W.2d 605, 608 (1962).

■ Minnesota law recognizes that the drafter of contract documents, in this case U.S. Fire, enjoys an advantage and consequently has an obligation to draft the document clearly. This principle also extends to the resolution of ambiguity in an insurance contract:

> Aside from the standard provisions required by statute, it is elementary that the language of an insurance policy, being that of the insurer, selected by it and intended for its own benefit in limiting the scope of its principal obligation, must be clear and unambiguous, and any reasonable doubt as to its meaning must be resolved in favor of the insured.

*Cement, Sand & Gravel Co. v. Agricultural Insurance Co.*, 225 Minn. 211, 215, 30 N.W.2d 341, 345 (1947).

Accordingly, Minnesota appellate courts have followed the rule that any reasonable doubt as to the meaning of insurance policy language will be resolved in favor of the insured. *See Safeco Insurance Co. v. Lindberg*, 394 N.W.2d 146, 148 (Minn.1986); *Rusthoven v. Commercial Standard Insurance Co.*, 387 N.W.2d 642, 645 (Minn. 1986) (one of the fundamentals of insurance law is that ambiguous language in an insurance policy is to be construed in favor of the insured); *see also Nordby v. Atlantic Mutual Insurance Co.*, 329 N.W.2d 820, 822 (Minn.1983); *Farmers Home Mutual Insurance Co. v. Lill*, 332 N.W.2d 635, 637 (Minn.1983) (a competing reasonable interpretation of the policy gives rise to an ambiguity and the insurer's reading must give way to the insured's); *Canadian Universal Insurance Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn.1977).

■ The Supreme court has also held that the reasonable expectations of the insured will be given effect if there are important, but obscure, conditions or exclusions which were not identified for the insured. *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271, 278 (Minn.1985). However, we need not apply the expanded reasonable expectations doctrine because we conclude that an ambiguity exists in the contract language itself.

■ The policy does not define the terms "aerobatic flight, air show, or aerobatic competition." U.S. Fire argues that these terms, commonly understood, do not include "air racing" or "closed-course pylon racing." Reference to common usage does not settle the issue, however. The American Heritage Dictionary, Second College Edition (1982), defines aerobatics as "performance of stunts * * * with an airplane or glider." Webster's New Universal Unabridged Dictionary, Second Edition (1983), defines aerobatics as "spectacular feats done in flying * * *." Neither definition excludes air racing. The sharp turns, rapid acceleration and close-to-the-ground flying associated with closed-course pylon racing could meet the common usage definition of aerobatics.

Aside from common usage, U.S. Fire asserts that any ambiguity is resolved by the language of the policy endorsement, which requires an ordinary reader to refer to Federal Aviation Regulations Part 91.71 to determine what activities are covered if a proper certificate or waiver is obtained.

This does not provide a clear comparison because there is a disparity between the terms used by the policy and those of F.A.R. 91.71. The language of the policy refers to "aerobatic" flight or "aerobatic" competition, while F.A.R. Part 91.71 refers to "acrobatic" flight. F.A.R. 91.71 defines "acrobatic" flight as follows:

> For the purpose of this section, acrobatic flight means an intentional maneuver involving an abrupt change in an aircraft's attitude, an abnormal attitude, or abnormal acceleration, not necessary for normal flight.

14 C.F.R. § 91.71 (1983).

The definition of "acrobatic" flight in F.A.R. 91.71 applies to all realms of flight. F.A.R. 91.71 defines by describing the actual movements of the aircraft. Under this analysis, the abrupt changes in attitude characteristic of the sharp turns performed by a race participant rounding a pylon and rapid acceleration in completing the turn are well within the F.A.R. 91.71 description of "acrobatic" flight. These maneuvers are as easily included as the flying at abnormal attitudes characteristic of inverted flight performed by an aerobatic pilot. The maneuvers performed during closed-course pylon racing are reasonably included within the definition of "acrobatic" flight under F.A.R. 91.71. Also, it must be noted that two of the four regulations under F.A.R. 91.71 were in fact waived for purposes of the Reno race. Reference to F.A.R. 91.71 does not resolve the ambiguity found in the policy language which refers to "aerobatic flight" or "aerobatic competition."

The policy language relating to a waiver or certificate is a further source of ambiguity. It suggests that an aircraft is fully insured if one of two conditions hold: (1) "if the aircraft is operated in full compliance with the federal aviation regulations * * *, or [(2)] as may be amended by a certificate or waiver in accordance with the provision of F.A.R. 91.63." This language can equally support an interpretation that coverage is provided at any time an activity is conducted under a certificate or waiver. It is undisputed that the FAA waiver was obtained.

For these reasons, we conclude that the applicable language of AMS/Air's policy with U.S. Fire is ambiguous. The terms "aerobatic flight, airshows and aerobatic competition" are susceptible to the inclusion of the activity of "air racing." When language of an insurance policy is ambiguous or susceptible of two meanings, it must be given the meaning which is favorable to the finding of insurance coverage. *Nordby*, at 822.

## DECISION

Reversed with directions to enter summary judgment in favor of AMS/Air.