Raymond W. ANDERSON, et al., Appellants,

v.

NORTHWESTERN BELL TELEPHONE COMPANY, North River Insurance Company, Respondents.

No. C8–89–369.

Court of Appeals of Minnesota.

July 25, 1989.

Thomas J. Davern, Ardery and Davern, Golden Valley, John D. Hagen, Jr., Minneapolis, for appellants.

Robert W. Kettering, Jr., Eugene C. Shermoen, Arthur, Chapman & McDonough, P.A., Minneapolis, for Northwestern Bell Telephone Co.

James L. Haigh, Michael W. McNee, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for North River Ins. Co.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

The trial court ruled that self-insured respondent Northwestern Bell Telephone Company (Bell) provided $25,000 of underinsured motorist (UIM) insurance and that because appellant Raymond W. Anderson (Anderson) was driving a car owned by Bell when he was injured, recovery was not possible from his personal insurer, respondent North River Insurance Company (North River). Appellants Raymond W. and Barbara Anderson argue that Bell, as primary insurer, provided UIM coverage of one million dollars and that North River is liable for secondary UIM coverage. We affirm in part and reverse in part.

## FACTS

Anderson was injured in May 1986 while operating a Bell vehicle in the course of his employment. The tortfeasor's insurer tendered its $30,000 policy limits to him. At the time of the accident, Bell was self-insured and Anderson's North River policy included $300,000 UIM coverage. When the Andersons' requests for additional recovery from Bell and North River were denied, they sued both companies.

Discovery revealed a Bell document dated "2/9/88" and entitled "Certificate of Self–Insurance" which states:

Northwestern Bell is self insured as follows:

| DESCRIPTION OF COVERAGE | LIMITS |
| --- | --- |
| Comprehensive General Liability and Property Insurance | $1,000,000 |
| Employer's Liability | $100,000 |
| Worker's Compensation | statutory |

Re: <u>As respects all operations during the year 1986.</u>

(Emphasis added.)[1] When the Andersons moved for summary judgment, arguing that Bell's UIM coverage was one million dollars, Bell also moved for summary judgment and argued that as a self-insurer, it provided only the statutory minimum UIM coverage of $25,000. Also, North River

---

1. Counsel's comments at oral argument, their briefs, and the record in general, evidence disagreement and confusion regarding this document. While it has a 1988 date, it articulates Bell's coverages effective in 1986. No party alleges that Bell did not have one million dollars in self-insurance in 1986.

argued that Anderson was entitled to full recovery from Bell.

The trial court found that Bell provided only the statutory minimum UIM coverage, and had no liability in this matter because the $30,000 paid on behalf of the tortfeasor exceeded the $25,000 of UIM coverage provided by Bell. Finally, the trial court determined that North River had no exposure because when an employee is injured in an employer's vehicle, the available UIM coverage is limited to that covering the involved vehicle.

The Andersons join North River in challenging the trial court determination that Bell provided only $25,000 in UIM coverage. They join Bell in challenging the trial court's elimination of North River's UIM exposure.

## ISSUES

1. Did the trial court err in determining that Bell provided $25,000 underinsured motorist coverage?

2. Did the trial court err in determining that North River had no underinsured motorist exposure?

## ANALYSIS

### I.

Because

[t]here does not seem to be any sound basis for treating [a self-insured entity] any different from any other insurer in terms of its responsibilities

*State Farm Mutual Automobile Insurance Co. v. Budget Rent–A–Car Systems, Inc.,* 359 N.W.2d 673, 676 (Minn.Ct.App. 1984), and because Minnesota insurers cannot issue automobile insurance policies "unless uninsured [UI] and underinsured motorist [UIM] coverages are provided therein," Minn.Stat. § 65B.49, subd. 3a(1) (Supp. 1985), Bell's self-insurance plan provides UIM coverage. By statute, "[UI and UIM] coverages combined, at a minimum must provide limits of $25,000 [per person] and $50,000 [per accident]." *Id.*

The trial court found that Bell did not specifically state the terms and limits of its UIM coverage. Therefore, the court implied the $25,000 minimum coverage required at law. North River challenges this determination arguing that if Bell wished to so limit its UIM liability, it had a duty to set forth the lower limits in its Certificate of Self–Insurance. We cannot agree.

■ Under the No–Fault Act, a self-insurer is required to perform "[the] *obligations* imposed by 65B.41 to 65B.71." Minn.Stat. § 65B.48, subd. 3(1) (1984) (emphasis added). The only UIM coverage Bell is obligated to maintain is $25,000 per person and $50,000 per accident. *See* Minn.Stat. § 65B.49, subd. 3a(1) (Supp. 1985). Where mandated coverages are absent from the relevant plan of reparation security, such coverage will be imposed at law and "the only coverage appropriately imposed in such cases is the 'statutory minimum coverage.'" *State Farm Mutual Automobile Insurance Co. v. Feldman,* 359 N.W.2d 57, 59 (Minn.Ct.App.1984) (citation omitted). Therefore, we believe any presumption regarding the extent of UIM coverage should be for the minimum amount required.

■ North River further argues that because Bell led the State to believe that it (Bell) was providing one million dollars in no-fault coverage, it should be "estopped from denying that such limits of liability apply to [its] UIM coverage." Again, we cannot agree.

The supreme court has stated:

To establish a claim of estoppel, *plaintiff* must prove that defendant made representations or inducements, upon which *plaintiff* reasonably relied, and that *plaintiff* will be harmed if the claim of estoppel is not allowed.

*Northern PetroChemical Co. v. United States Fire Insurance Co.,* 277 N.W.2d 408, 410 (Minn.1979) (emphasis added). Even if we assume that North River's position as a respondent in this action does not prevent it from raising the issue of estoppel, the pleadings, affidavits and briefs are void of any argument or evidence regarding pre-accident inducement by Bell of Anderson regarding Bell's UIM coverage. This is fatal to North River's argument as

"inducement is central to the concept of equitable estoppel." *Ridgewood Development Co. v. State,* 294 N.W.2d 288, 293 (Minn.1980).

■ The Andersons also maintain that ambiguities in Bell's Certificate of Self–Insurance must be resolved in their favor and therefore they are entitled to $1,000,000 of UIM coverage from Bell. While we agree that ambiguous policy language must be construed to find coverage, and that doubt about the meaning of policy language is to be resolved in favor of the insured, this argument is not persuasive. *See Amatuzio v. United States Fire Insurance Co.,* 409 N.W.2d 278, 281 (Minn.Ct.App.1987).

■ The Andersons assume that Bell's Certificate of Self–Insurance is, or can be treated as, an insurance "policy." However, neither the statutes nor the rules governing self-insurance require a self-insured entity to have or to issue any documentation regarding coverages. *See* Minn. Stat. § 65B.48, subds. 3, 3a (1984 and Supp. 1985); Minn.R. 2770.6100–.7400 (1985). These statutes and rules are designed to assure that a self-insurer has sufficient assets, secondary coverages and administrative capacity to meet prospective insurance obligations.

■ Also, an insurance "policy" is a contract between an insured and an insurer. *See Amatuzio,* 409 N.W.2d at 280 (same document referred to as "an insurance contract" and "an insurance policy"). The Andersons' categorization of Bell's Certificate of Self–Insurance as an insurance "policy" is inconsistent with the no-fault definition of a "plan of reparation security" as

> a contract, self-insurance, or other legal means under which there is an obligation to pay the benefits described in section 65B.49.

Minn.Stat. § 65B.43, subd. 15 (1984). The statute's separate listing of "contract" and "self-insurance" indicates that they are distinct. As such, self-insurance is separate from, and does not include traditional insurance contracts (or policies) with insureds. This statutory distinction must take precedence over any case law which

may appear to indicate that self-insurers are to be treated similarly to all other insurers. The rules of insurance policy interpretation are not applicable in the context of self-insurance.

Our determination that rules of policy interpretation are inapplicable to self-insureds is consistent with the fact that self-insureds are not required to have the carefully worded, highly specific policy provisions, declarations and coverage limits required of insurance companies. Thus, any documentation of a self-insurer may not be the product of the care and expertise in draftsmanship presumed by the interpretive rules.

Finally, both North River and the Andersons argue that the holding of *Sawyer v. Midland Insurance Co.,* 383 N.W.2d 691 (Minn.Ct.App.1986), *pet. for rev. granted, later vacated as improvident* (Minn. Jan. 2, 1987), requires that Bell be estopped from denying $1,000,000 of UIM coverage. In *Sawyer,* an insurer alleged that because certain endorsements describing coverage were not attached to the policy issued to a customer, the insurer was not required to provide the described coverage. This court disagreed, stating

> [the Company's] obligation to provide coverage in accordance with the endorsements filed with the Commissioner arises not from its private contract with [its customer], but from its agreement with the State of Minnesota. * * * Premium and rate charges can be evaluated only relative to the coverage afforded. Because the Commissioner was led to believe that [the Company's] premiums afforded its insureds protection as set out in the filed endorsements, [the Company] should be estopped from denying such coverage.

*Sawyer* at 694–95. The rationale for finding coverage in *Sawyer* was the state's power to protect an insured from excessive premiums for coverage rendered. *Sawyer's* protective rationale is inapplicable where no premiums are paid.

■ A UIM carrier's liability is limited to

the lesser of the difference between the limit of underinsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; * * *.

Minn.Stat. § 65B.49, subd. 4a (Supp.1985). Therefore, under this statute, because the $30,000 payment on behalf of the tortfeasor exceeds the $25,000 primary UIM coverage provided by Bell, the trial court did not err in determining that Bell had no liability in this situation.[2]

## II.

The trial court relied on Minn.Stat. § 65B.47, subd. 2 and *Kelsey v. State Farm Mutual Automobile Insurance Co.,* 365 N.W.2d 795 (Minn.Ct.App.1985), in ruling that the Andersons were not eligible for any UIM benefits under their policy with North River. Both section 65B.47, subd. 2 and *Kelsey* deal with priority issues involving basic economic benefits, not UIM coverage.

All parties agree on appeal that Minn. Stat. § 65B.49, subd. 3a (Supp.1985) was the applicable statute and that North River is secondarily liable to provide UIM coverage for the Andersons. We also agree. The priority system for UIM coverages is set out at Minn.Stat. § 65B.49, subd. 3a(5), and states:

[E]xcess insurance protection * * * is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available

to the injured person from the occupied motor vehicle.

Additionally, a UIM carrier's exposure is limited to

the lesser of the difference between the limit of underinsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or the amount of damages sustained but not recovered.

Minn.Stat. § 65B.49, subd. 4a. *See also Broton v. Western National Mutual Insurance Co.,* 428 N.W.2d 85, 89 (Minn. 1988).

■ Construing these two statutes together to determine the exposure of the secondary UIM insurer is straightforward when the payments made on behalf of the tortfeasor are less than the UIM limits of the primary UIM carrier. In such a situation, under Minn.Stat. § 65B.49, subd. 4a, the coverage available from the primary insurer is the difference between the amount paid on behalf of the tortfeasor and the primary carrier's UIM limit. Under Minn.Stat. § 65B.49, subd. 3a(5), the excess coverage is the amount by which the secondary insurer's limit "exceeds the limit of liability of the coverage *available* to the injured person from the occupied motor vehicle." *Id.* (emphasis added). Subsequently, the second insurer's exposure is reduced under section 65B.49, subd. 4a by:

[T]he amount paid the insured by or for any person or organization who may be held legally liable for the bodily injury [i.e., on behalf of the tortfeasor]; * * *.

The resulting net coverage to the victim is equal to the total UIM coverage purchased from the second insurer.[3]

---

2. We note that because a UIM carrier's exposure is reduced by the amount paid on behalf of a tortfeasor under Minn.Stat. § 65B.49, subd. 4a, minimum UIM coverage of $25,000 is illusory. The minimum liability coverage required under Minn.Stat. § 65B.49, subd. 3 equals or exceeds minimum UIM coverage. Compare Minn.Stat. § 65B.49, subd. 3 (Supp.1985; 1986; Supp.1987; 1988) and Minn.Stat. § 65B.49, subd. 3a(1) (Supp.1985; 1986; Supp.1987; 1988).

3. For Example: If $30,000 is paid on behalf of a tortfeasor, the primary insurance limit is $50,-000 and the secondary UIM limit is $200,000,

Minn.Stat. § 65B.49, subd. 4a exposes the primary carrier to $20,000 ($50,000 less $30,000). Under section 65B.49, subd. 3a(5), the excess UIM coverage is $180,000 ($200,000 minus $20,-000 "coverage available" from the occupied motor vehicle). This $180,000 is again reduced under Minn.Stat. § 65B.49, subd. 4a by the $30,-000 paid on behalf of the tortfeasor for net secondary exposure of $150,000. Assuming sufficient damages, the victim recovers $200,000 ($30,000 plus $20,000, plus $150,000), exactly the UIM coverage limit for which the victim paid.

When as here the payments on behalf of the tortfeasor exceed the coverage provided by the primary UIM carrier, application of Minn.Stat. § 65B.49, subd. 4a results in the primary UIM carrier having no exposure. Therefore, when calculating the secondary carrier's excess coverage under section 65B.49, subd. 3a(5), there is no "coverage available" from the occupied motor vehicle. The only reduction of the secondary carrier's exposure occurs through application of section 65B.49, subd. 4a. Again, the result is that the victim's net coverage equals the total UIM coverage purchased from the secondary UIM insurer.[4] Application of Minn.Stat. § 65B.49, subds. 3a(5) and 4a to the facts of this case results in an exposure of North River in the amount of $270,000.

## DECISION

The trial court did not err in concluding that a self-insured entity is only obligated to provide the statutory minimum underinsurance coverage. Additionally, applicable underinsured motorist coverage is determined by Minn.Stat. § 65B.49, subds. 3a(5) and 4a.

Affirmed in part and reversed in part.

---

4. Specifically, in this case the $30,000 paid on behalf of the tortfeasor exceeds Bell's primary UIM coverage of $25,000. Therefore, 4a precludes any exposure of Bell. Under 3a(5), North River's secondary UIM coverage is not reduced in any amount because there is, in fact, no "coverage available" from Bell's vehicle. However, under 4a, North River's exposure would be reduced by the $30,000 paid on behalf of the tortfeasor, resulting in net North River exposure of $270,000. Assuming sufficient damages, the Andersons may recover an amount equal to the $300,000 UIM coverage for which they paid.