Claudia McCLAIN, as Trustee for the heirs and next of kin of Michelle Elizabeth McClain, Decedent, Respondent,

v.

Bridget J. BEGLEY, Respondent,

Christine S. Meyers, Defendant,

Altra Auto Rental, Inc., a division of Agency Rent–A–Car, Inc., Appellant.

ALTRA AUTO RENTAL, INC., A DIVISION OF AGENCY RENT–A–CAR, INC., Appellant,

v.

FIREMEN'S FUND INSURANCE COMPANY, Defendant,

Allstate Insurance Company, Respondent.

No. C1–89–2206.

Court of Appeals of Minnesota.

June 12, 1990.

Review Granted Aug. 22, 1990.

Eric Magnuson, Stephen P. Watters, Andrea Walsh, Rider, Bennett, Egan & Arundel, for respondent Claudia McClain.

William M. Hart, R. Gregory Stephens, Meagher & Geer, Minneapolis, for respondents Bridget J. Begley and Allstate Ins. Co.

Bonita J. Girard, Bassford, Heckt, Lockhart & Mullin, P.A., Minneapolis, for defendant Christine S. Meyers.

Considered and decided by SHORT, P.J., and NORTON and MULALLY,* JJ.

## OPINION

SHORT, Judge.

Altra Auto Rental, Inc., a division of Agency Rent–A–Car, Inc. (Altra), appeals the trial court's determination that Altra's self-insurance plan provides primary liability coverage in this action up to the full amount of its self-insured retention, $500,000. Altra argues that it should provide primary liability coverage only in the amount mandated by statute, $30,000 per person and $60,000 per accident. We agree and reverse.

## FACTS

The facts of this case are not in dispute. In 1986, four college-aged women planned to take a spring vacation to Padre Island in Texas. One of them, Shannon Murphy, contacted Altra, inquiring about renting a car. The agent told Murphy the least expensive rental rate could be obtained if the rental car were a substitute for an out-of-service vehicle owned and insured by the renter. Murphy told the agent that another of the foursome, Michelle McClain, had an out-of-service Volkswagen. The agent delivered the rental car on March 21. McClain was not available, so Christine Meyers, the only member of the group over age 21, signed the rental agreement. Meyers and Murphy informed the agent that McClain had an insurance policy with Fireman's Fund Insurance. The agent later filled in the rental form with an invented policy number, agent's name, and agency phone number. The form indicated that Altra did not provide liability insurance, and that the vehicle was to be insured by the lessee.

On March 30, at 4:00 a.m., the four women were passing through Missouri on their way back to Minnesota. Respondent Bridget Begley fell asleep at the wheel,

and collided with a vehicle parked at the side of the interstate. McClain, riding in the front passenger seat, was killed. When the rental agent learned of the accident, he blotted out the false information on the rental form.

Claudia McClain, trustee for the heirs of Michelle McClain, brought a wrongful death action against Begley, Meyers, and Altra. Begley was insured on her parent's policy with Allstate. Altra commenced a declaratory judgment action against Allstate and Fireman's Fund to determine the priority of coverage. The claim against Fireman's Fund was dismissed, apparently because McClain did not have a valid policy with Fireman's at the time of the rental.

McClain, Begley, Meyers and Allstate moved for partial summary judgment in the wrongful death action, seeking a declaration that Altra provided primary liability coverage up to its self-insured retention limit of $500,000. The trial court granted the motion, and this court denied a petition for discretionary review.

The parties then stipulated that McClain's death was caused by Begley's negligence, that the total amount of damages was $155,000, and that the wrongful death and declaratory judgment actions would be consolidated. Judgment was entered accordingly. The sole issue on appeal is the extent of Altra's liability. Altra argues it is liable only in the amount statutorily mandated, or $30,000, and that Allstate is secondarily liable for its full amount of coverage, $100,000. Under this scenario, McClain's estate will go uncompensated for $25,000. Respondents argue that Altra is liable to the limits of its self-insured retention, or $500,000. Under this scenario, McClain's estate will be fully compensated for the stipulated amount of damages, and Allstate will have no liability.

## ISSUE

Is a self-insurer liable to the limits of its self-insured retention if it fails to specify lower liability limits?

## ANALYSIS

■ Where the sole issue on appeal is the trial court's application of law, this

---

* Acting as judge of the Court of Appeals by ap-　pointment pursuant to Minn. Const. art. 6, § 2.

court reviews the judgment de novo. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977). The trial court in this case construed the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (1986), as imposing liability on a self-insurer up to its self-insured retention limits. We believe this result is inconsistent with the no-fault act and with Minnesota case law.

The source of Altra's obligation to provide coverage is the statutory mandate that every owner of a vehicle licensed in this state maintain a plan of reparation security under terms approved by the insurance commissioner. Minn.Stat. § 65B.48, subd. 1. The reparation plan must insure against loss resulting from liability imposed by law for injury sustained by any person arising out of the operation of the vehicle. *Id.* The reparation plan must contain stated limits of liability, not less than $30,000 for bodily injury per person, and $60,000 per accident. Minn.Stat. § 65B.49, subd. 3.

The requirement to maintain a reparation plan may be satisfied by registering and qualifying as a self-insurer. Minn.Stat. § 65B.48, subd. 2. Self-insurance is effected by filing with the insurance commissioner documents demonstrating the following:

(1) a continuing undertaking by the owner or other appropriate person to pay tort liabilities or basic economic loss benefits, or both, and to perform all other obligations imposed by sections 65B.41 to 65B.71;

(2) evidence that appropriate provision exists for prompt administration of all claims, benefits, and obligations provided by sections 65B.41 to 65B.71;

(3) evidence that reliable financial arrangements, deposits, or commitments exist providing assurance, substantially equivalent to that afforded by a policy of insurance complying with sections 65B.41 to 65B.71, for payment of tort liabilities, basic economic loss benefits, and all other obligations imposed by sections 65B.41 to 65B.71; and

(4) a nonrefundable application fee of $500.

Minn.Stat. § 65B.48, subd. 3 (1986).

The commissioner is empowered to adopt rules to assure the adequacy of the financing and administration of self-insurance plans. Minn.Stat. § 65B.48, subd. 3a. These rules are designed to ensure that self-insurers "have the financial and administrative resources needed to satisfy all obligations and responsibilities" under the No–Fault Act. Minn.R. 2770.6100 (1985).

Altra's self-insurance plan was effected by filling out a form developed by the insurance commissioner. The form nowhere requests that the self-insurer provide express liability limits. However, the form requests the following:

List all excess insurance applicable to motor vehicle accidents, with name(s) of insurer(s), policy number(s) and limits of liability.

Altra provided the following information:
Lexington Insurance Company
Policy No. 552 8742
Effective: 12–31–86/87
Amount of Insurance: $2,500,000 in excess of $500,000 S.I.R. [self-insured retention]

 Allstate's argument is that Altra's statement that it had $500,000 of self-insured retention is a statement of intent to provide $500,000 of liability coverage to each accident. We disagree for several reasons. First, a self-insurance plan is not construed strictly against the drafter, as insurance policies are. *Anderson v. Northwestern Bell Telephone Co.*, 443 N.W.2d 546, 549 (Minn.App.1989). Thus, we review the form in the light of the purposes it was intended to serve, i.e., to assure the state that Altra would be able to meet its burden to provide the statutorily required coverage. *Id.* Second, Altra's statement that it had $500,000 of self-insured retention was not responsive to the question asked. It would be ironic if Altra's gratuitous provision of unrequested information became the basis of an obligation to pay $125,000 more than the legal obligation it carried. The statement that Altra was obligated to provide $500,000 of

coverage before invoking its excess insurance plan does not logically imply that Altra intended to provide coverage in each accident for that amount. It is obvious that Altra did not intend this entry as its "stated limits of liability," required by Minn.Stat. § 65B.49, subd. 3. Further, it can hardly be suggested that McClain relied on the self-insurance plan in failing to obtain her own insurance. The self-insurance form is not intended to create obligations between the public and the self-insurer. Rather, it assures the state that the self-insurer can meet the obligations imposed by statute.

Our conclusion is bolstered by the insurance commissioner's conclusion that Altra was in violation of the no-fault act because it had not maintained a plan of reparation security on its vehicles. The commissioner specifically concluded Altra had not provided liability coverage as required by Minn. Stat. § 65B.49, subd. 3. The commissioner revoked Altra's self-insurance authorization, pursuant to its statutory authority.

The next logical issue is what consequences should follow from Altra's failure to provide specific liability limits. The commissioner has already taken administrative action against Altra, and we have no authority to take further punitive measures. We note that the insurance commissioner could prevent disputes such as the one before us by requiring self-insurers to state express coverages in their self-insurance plan. The commissioner could reject requests for self-insurance that do not contain express limits of coverage.

This court has previously determined that in the absence of specific limits of underinsured motorist (UIM) coverage in a self-insurance plan, the statutory minimum will be imposed by law. *Anderson*, 443 N.W.2d at 548. UIM coverage, like liability coverage, must be contained in all plans of reparation security. Minn.Stat. § 65B.49, subd. 3a(1). Thus, in *Anderson* this court refused to penalize the self-insurer for its failure to provide express limits on its UIM coverage. Instead, this court imposed the statutorily required minimum

amounts of coverage. *Anderson*, 443 N.W.2d at 548.

█ Similarly, we hold that in the absence of express limitations on liability coverage contained in a self-insurance plan, the statutory minimum amount of coverage will be imposed. This court held in *State Farm Mutual Automobile Insurance Co. v. Budget Rent–A–Car Systems, Inc.*, 359 N.W.2d 673, 676 (Minn.App.1984) that a rental agency is primarily liable for liability coverage, up to its full self-insured retention amount of $100,000, and the driver's insurer is secondarily liable. The argument made here, that the rental agency's liability should be limited to the statutory minimum amount of coverage, was not addressed in *State Farm Mutual*. It is possible that the self-insurance plan there expressly provided for $100,000 of coverage for each accident—the opinion does not provide this information. The holding in *State Farm Mutual*, therefore, is not inconsistent with our holding in this case.

## DECISION

In the absence of express limitations on liability coverage contained in its self-insurance plan, a self-insurer is liable only in the amounts mandated by statute.

Reversed.

NORTON, J., dissents.

NORTON, Judge, dissenting.

I respectfully dissent. The majority misconstrues *Anderson, Budget* and the trial court's ruling in this case to reach its result.

The trial court in this case did not 'construe the No-fault Act to impose liability on a self-insurer up to its self-insured retention.' The trial court specifically stated, "This is not a case of the court imposing liability." It added "Altra has conceded that if it is liable as owner (as opposed to vicariously liable for its driver) we'd have significant coverage available." In fact, the fundamental source of Altra's liability in this case is because it was the owner of the vehicle; liability follows the car.

*Crews v. Criterion Insurance Co.*, 370 N.W.2d 83, 85 (Minn.App.1985).

It is uncontroverted that Altra complied with the self-insurance alternative available under the No-fault Act and completed the forms and complied with the rules promulgated by the Department of Commerce in self-insurance matters. It is also uncontroverted that Altra attempted to avoid liability in its rental transactions through use of a contract clause in which the lessee waived liability on the part of Altra and assumed liability herself. This contract was found unconscionable, illegal and unenforceable by the trial court and was also declared illegal by the Commissioner of Commerce, as the majority notes.

Both the trial court and the Commissioner, in separate proceedings, relied upon the findings, conclusions and recommendation of Administrative Law Judge Kaibel who presided over hearings on the legality of Altra's lease contract. The trial court here specifically adopted the ALJ's conclusion that Altra, as a lessor, was the legal owner of the vehicles and could not contract away its legal responsibility as an owner to provide liability coverage. The Commissioner found that Altra was not providing a plan of reparation security because the Commissioner found that Altra was forcing its customers to assume Altra's liability. Nonetheless, the Commissioner also found that Altra was "a qualified self-insurer of its own vehicles." Because Altra has chosen not to appeal any of those decisions, the issues they involved are fully decided. The only matter before this court is whether a self-insured who has represented in its self-insurance application that it is able to pay claims up to $3 million is instead limited by law to paying only $30,000. In order to say that it is, the majority misconstrues prior case law.

In stating that the Commerce Department's self-insurance application form does not contain liability limits, the majority necessarily decides that the Department has not complied with Minn.Stat. § 65B.49, subd. 3, which requires plans to indicate limits of liability. I would construe that application form to contain express liability limits in accordance with the relevant statute. That application expressly indicates that Altra has decided to self-insure the first $500,000 in damages and has purchased additional coverage of $2,500,000 in excess of that $500,000 self-insured retention. That excess liability policy expressly applied to each and every claim or occurrence. At the time of the accident, Altra routinely sought to avoid owner's liability by forcing lessees to assume Altra's obligations. However, coverage is frozen at the time of the accident and the documents available clearly indicate that Altra, if it were to be held liable at all, expected to pay the first $500,000 itself.

Two prior decisions from this court are relevant to the self-insurance situation presented. In relying upon the least similar case and then rejecting the case which should control, the majority misconstrues both to reach its result. In *Anderson v. Northwestern Bell Telephone Co.*, 443 N.W.2d 546 (Minn.App.1989), discovery revealed this unfiled internal corporate document:

| DESCRIPTION OF COVERAGE | LIMITS |
| --- | --- |
| Comprehensive General Liability and Property Insurance | $1,000,000 |
| Employer's Liability | $ 100,000 |
| Worker's Compensation | statutory |
| Re: As respects all operations during the year 1986. | |

*Id.* at 547. This court examined an internal corporate document to determine coverage available to an employee of a self-insured corporation who was injured by a third party tort-feasor. The question presented was whether the document, which expressed other coverages but was silent on uninsured motorist coverage, nonetheless contained UIM benefits. This unofficial document says almost nothing when compared to the official application form filed here, but it was held to evidence a plan of reparation security from which statutorily required UIM coverage was absent. The majority misreads *Anderson* to hold that 'in the absence of specific limits of underinsured motorist (UIM) coverage in a self-insurance plan, the statutory minimum will be imposed by law.' In *Anderson*, this court held that UIM coverage not expressed in a self-insured's plan could be

implied. *Anderson* did not affect *Budget;* it relied upon *Budget* to extend into self-insurance the *Feldman* doctrine that where mandated coverages are *absent* from a· plan of reparation security, they must be implied by law and will be imposed only to the statutory minimum. *Anderson,* 443 N.W.2d at 548 (citing *State Farm Mutual Automobile Insurance Co. v. Feldman,* 359 N.W.2d 57 (Minn.App.1984)); *see also Beukhof v. State Farm Mutual Automobile Insurance Co.,* 371 N.W.2d 538, 542 (Minn.1985).

Unlike *Anderson,* this case involves only the limits of *liability* of a self-insured whose application to self-insure and excess liability policy, referred to in its application, are filed and available for review. Altra does not challenge the trial court's decision that Altra provides primary liability coverage. *Budget,* which recognized that a self-insured car rental agency is liable up to the limits of its self-insurance arrangement, is directly on point. *Budget,* 359 N.W.2d at 676.

A plan of reparation security must state the limits of liability. Minn.Stat. § 65B.49, subd. 1. Although a self-insured must *perform* all the obligations imposed by the No-fault Act, the only coverage limits it is required to *state* are those pertaining to liability. The application Altra filed with the Department of Commerce states a self-imposed limit of $500,000.

That application describes "excess insurance applicable to motor vehicle accidents" and "limits of liability" as "$2,500,000 in excess of $500,000" self-insured retention. (There is some question whether this excess coverage would, in fact, have applied to motor vehicle accidents, but Altra's application represents it nonetheless.) Like an insurance policy, this limit of liability is selected by the insured and applies to each claim or occurrence. To hold that this application, accepted by the Department of Commerce, contains no stated limit of liability is to hold that it does not comply with the statute. Altra does not argue that the Department erred in accepting its application, nor that the application was inadequate to effect a self-insurance plan of reparation security for tort liability. Moreover, liability coverage is the fundamental aspect of motor vehicle insurance; this coverage need not be implied by law. Thus, application of the *Feldman* rule to determine the amount of coverage is inappropriate.

The majority compares Altra's *official* self-insurance application to the Northwestern Bell internal corporate document examined in *Anderson.* The majority concludes that Altra's official application is no more relevant to the question presented than was Bell's document. The majority states, "Altra's statement that it had $500,000 of self-insured retention was not responsive to the question asked." I disagree. That answer is directly responsive to a request to "list all excess insurance policies applicable to motor vehicle accidents," with "limits of liability." By stating that it had insurance of $2,500,000 in excess of its $500,000 self-insured retention, Altra was stating *two* limits of liability: that of its underlying (self-insurance) coverage, and that of its excess insurance. By stating both, Altra accurately depicted the upper *and lower* limits of the excess coverage.

The majority goes on to state, "It would be ironic if Altra's gratuitous provision of information not requested anywhere on the form became the basis of its obligation to pay $125,000 more than the legal obligation it carried." Again, I disagree. That information was not provided gratuitously. It is required by law. Minn.Stat. § 65B.49, subd. 1. Moreover, what would be ironic is if this court were to conclude that a self-insured, unlike any other tort-feasor, might be liable only for damages less than $30,-000 or greater than $500,000 but was not required to pay damages between those two amounts.

The majority also concludes that "the statement that Altra was obligated to provide $500,000 of coverage before invoking its excess insurance plan does not logically imply that Altra intended to provide coverage in each accident for that amount." Neither Altra's intentions nor its obligations need be "logically implied"; the excess policy in question expressly states,

in its declarations, that this coverage applies to each claim or occurrence. There is no question that Altra assumed the risk of paying the first $500,000 of liability.

Finally, the majority's conclusions that McClain did not rely upon Altra's self-insurance and that the self-insurance form is not intended to create obligations between the public and the self-insurer are completely irrelevant to the legal question presented here. Every owner of a motor vehicle is required to accept responsibility for damages resulting from operation of that motor vehicle. That obligation is created by law and cannot be contracted away. Similarly, the majority's reliance on the later and possibly unrelated revocation by the Commissioner of Commerce of Altra's right to self-insure is a reliance misplaced. The Commissioner found that Altra had not maintained a plan of reparation security because it found that Altra was requiring lessees to contract away Altra's liability, something that Altra could not do. Finally, the majority's concern for punitive measures is inappropriate in a civil case. The question presented involves a matter of pure law and statutory interpretation. To require a party to comply with the civil law and to conform with its representations to the Department of Commerce that it was in compliance with the civil law, is not appropriately characterized as "punitive measures."

The issue presented by this case begs the question why any self-insured would elect liability limits higher than the statutorily required minimum amount; however, business risk management may involve any number of factors. Each of us who buys a policy of insurance faces similar decisions regarding the amount of coverage needed, the amount of deductible we are willing or can afford to risk, and the affordability of the resulting premium payment, which is heavily influenced by our election of coverage and deductible.

In this case, Altra paid a large premium ($750,000 with a minimum retained premium of $187,500) for an excess liability policy with a threshold, or deductible, of $500,000. Perhaps a policy with a lower thresh-old was not available, or cost so much more to purchase that it provided no *real* additional benefit. An insured tort-feasor pays a fixed premium for protection from a fixed amount of potential damages. That insured tort-feasor remains liable for any damages which exceed the amount of coverage purchased. The statutory minimums in the No-fault Act insure that victims of even insolvent or judgment-proof tort-feasors receive some amount of compensation. These statutory limits are minimum amounts; they neither prohibit higher limits nor cap liability.

The self-insured tort-feasor avoids fixed premiums and forgoes protection from that portion of potential loss which a purchased policy would otherwise cover. Like the insured tort-feasor, the self-insured tort-feasor remains liable for damages which exceed coverage. The self-insured tort-feasor, however, wears two hats. It may sometimes pay damages as an *insurer* and as a tort-feasor. Altra, having chosen to purchase only an excess liability policy with a threshold of $500,000, saved itself the premiums it would have otherwise paid as an insured but accepted the concomitant risks as an insurer for liability between $0 and $500,000.

The majority relies on *Budget* and holds "that in the absence of express limitations on liability coverage contained in a self-insurance plan, the statutory minimum amount of coverage will be imposed." While I disagree that *Budget* supports the majority position, I dissent on the basis of something much more fundamental: a self-insurance plan cannot be held to have an absence of express limitations on liability coverage. Because limits of liability are the only limits that any plan of reparation security is *required* to state, no plan approved by the Department of Commerce would ever be without limits. Therefore, I would hold that Altra chose and stated its limits of liability.

Altra's application to self-insure represented it had seamless liability coverage it made possible, like *Budget*, by risking the first amount, in this case $500,000, and purchasing an insurance policy to cover the

remainder. This case involves only the extent of exposure in liability coverage of a self-insured auto rental agency, like *Budget*, with an excess liability policy for coverage above its self-insured retention. Like *Budget*, Altra made a business risk management decision to not purchase insurance coverage for losses of less than a certain amount. Like *Budget*, Altra would receive a windfall unless it is held to have elected to accept exposure up to its self-insured retention. *See Budget*, 359 N.W.2d at 676. Although there are differences between this case and *Budget*, this case is much closer to *Budget* than it is to *Anderson*.