## 20419

SOUTHERN HOME INSURANCE COMPANY, Respondent, v. BURDETTE'S LEASING SERVICE, INC., Appellant.

(234 S. E. (2d) 870)

*Messrs. Julius B. Aiken and George F. Townes,* of Green-ville, *for Appellant,*

*John E. Johnston, Esq., Leatherwood, Walker, Todd & Mann,* Greenville, *for Respondent,*

May 6, 1977.

LITTLEJOHN, Justice:

This appeal grows out of an order of Greenville County Court holding that the defendant, Burdette's Leasing Service, Inc., must reimburse the plaintiff, Southern Home Insurance Company, in the amount of $12,000. This amount represents a portion of a $42,000 settlement paid by Southern Home to George Ashmore, who was injured while Tommy Lee was driving one of Burdette's leased motor vehicles.

Burdette's owns more than 25 motor vehicles and is engaged in the business of renting them to the public. It rented a motor vehicle to Messrs. Griffin and Howard (lessees) for the use of their employee, Lee. At the time of the accident in which Lee injured Ashmore, Southern Home had in force its automobile liability insurance policy naming Griffin and Howard as insured and extending coverage to Lee. The policy contained the standard "other insurance" provision found in automobile liability insurance policies which provide in part as follows:

". . . [U]nder coverage A [bodily injury liability] and B [property damage liability] the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."

Claim was made by Ashmore against Griffin and Howard and against Lee, for bodily injury and property damage arising out of the accident caused by the negligence and recklessness of Lee. Demand was made upon Burdette's (a self-insurer) to furnish a defense to Griffin and Howard and to Lee, and to pay any judgment up to $10,000 for personal injury and up to $5,000 for property damages. The demand was refused by Burdette's.

Southern Home entered a defense and settled Ashmore's claim by paying $40,000 for personal injury, plus $2,000 for

property damages. It has been stipulated that the amount was reasonable and if Southern Home is entitled to any judgment against Burdette's, the amount should be $10,000 for personal injuries, plus $2,000 for property damages.

The South Carolina Motor Vehicle Financial Responsibility Act (§46-701, *et seq.*, Code of Laws of South Carolina [1962]) provides the means by which a motor vehicle owner may prove his ability to respond to a judgment. This is usually accomplished by the procurement of a motor vehicle liability policy. The statute requires that the policy cover not only operation by the named insured, but also operation by ". . . any person who uses with the consent, express or implied, the motor vehicle to which the policy applies." Section 46-709 of the Code provides that owners of more than 25 vehicles may qualify as self insurers. It reads as follows:

"46-709. *Self-insurers.* Any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the Department as provided in this section. The Department may, in its discretion, upon the application of such person, issue a certificate of self-insurance when it is satisfied that the person is possessed and will continue to be possessed of ability to pay judgments obtained against him. Upon not less than five days' notice and a hearing pursuant to the notice the Department may upon reasonable grounds cancel a certificate of self-insurance. Failure to pay any judgment within thirty days after the judgment shall have become final shall constitute a reasonable ground for the cancellation of a certificate of self-insurance."

Burdette's qualified as a self-insurer under this Code provision and, accordingly, at the time of the accident there was no liability insurance policy covering the operation of the motor vehicle driven by Lee, with Burdette's as the named insured.

Burdette's attempted to minimize and/or avoid its responsibility under the Act by inserting in its lease agreement with Griffin and Howard a provision as follows:

"I will not hold Burdette's Leasing Service liable for any liability arising from the rental of this car."
and

"I fully understand that the car listed below is a replacement car and is covered by my insurance for the period of time of rental until this car is returned to the lessor."

The theory of Southern Home's case, as set out in its complant, is that Burdette's as a self-insurer, is obligated to provide to the public the same protection which a liability policy of insurance meeting the requirements of the statute provides.

It is the contention of Burdette's that it can be held liable only in case a judgment is procured against it under the doctrine of *respondeat superior*. Burdette's interposed four defenses: The first is in the nature of a qualified general denial and specifically brings into issue whether or not a self-insurer provides "other valid and collectible insurance" within the meaning of Southern Home's policy. Secondly, Burdette's takes the position that it would be liable under its self-insurance certificate only if a judgment had been entered against it arising out of the negligent operation of the vehicle. Thirdly, the defendant pleads the rental contract and alleges that Griffin and Howard are necessary parties to the action. Fourthly, Burdette's pleads that Southern Home was a volunteer and is not entitled to any right of subrogation.

The major issue presented is as follows: Does a self-insurer, qualified under our statute, provide the same coverage to automobiles owned by it as that which is required of an automobile liability insurance policy by our Motor Vehicle Financial Responsibility Law?

If this question is answered affirmatively, then a second question is presented:

Does this coverage provided by a self-insurer constitute "other valid and collectible insurance" within the meaning of Southern Home's liability policy as quoted above?

If both of these questions are answered in the affirmative, Southern Home is entitled to recover. If either question is answered in the negative, Southern Home is not entitled to recover.

The statute being unclear, we are called upon to interpret it and to determine the intent of the legislature as relates to the liability and responsibility of self-insurers. The overall purpose of the Act is to assure protection for the public for injuries and damages growing out of the negligent operation of motor vehicles on the roads of this State. In *Evans v. American Home Assurance Co.*, 252 S. C. 417, 166 S. E. (2d) 811 (1969), we said:

"Public liability insurance not only affords protection to insured motorists, it serves the public purpose of affording protection to innocent victims of motor vehicle accidents."

Technically, a self-insurer is not an insurer at all. In actuality, a self-insurer provides a substitute for an insurance policy.

The question which the Court must answer is, "What does Burdette's self-insure?" And more specifically, "Does Burdette's self-insure the operation of its motor vehicles by persons using them with consent, express or implied?"

We think it was the intention of the legislature that a self-insurer provide the same protection to the public that a statutory liability policy provides. A self-insurer substitutes for an insurance policy to the extent of the statutory policy requirements. Therefore, we hold that Burdette's does self-insure the operation of its motor vehicles by persons using with consent, express or implied.

By way of analogy, we note that the duties and liabilities of a self-insurer under Workmen's Compensation Law requires the self-insurer to pay those claims which normally would be paid by a Workmen's Compensation insurance carrier; thus, in like fashion, when one becomes a self-insurer under the Motor Vehicle Financial Responsibility Act, he must pay those claims which normally would arise under the terms of the Act and which are covered by the insurance policies described in the Act itself. This is consistent with the overall purpose of the Act.

This being true, it nceessarily follows that the protection which Burdette's must afford does constitute "other valid and collectible insurance" within the meaning of Southern Home's policy provision. To hold otherwise would negate the intent of the legislature.

Burdette's submits an additoinal question as follows:

Was Southern Home a volunteer with respect to Burdette's?

We are of the opinion and hold that under the circumstances recited herein-above Southern Home was contractually obligated (though not primarily) to defend and in so doing was not a volunteer.

The last question submitted is, "Can a person rent a car to someone with the understanding that such bailee's own insurance will be responsible?" The statute and not the parties determines the rights of injured parties and any contract inconsistent therewith is not binding. Accordingly, any effort on the part of Burdette to relieve itself of a liability imposed by law is void, at least insofar as an injured third party's claim is concerned.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.

Affirmed.