[No. B016592. Second Dist., Div. Five. July 3, 1986.]

GAYLE NATHANSON, Plaintiff and Appellant, v.
HERTZ CORPORATION, Defendant and Respondent.

**COUNSEL**

Michel & Cerny, Allen L. Michel and Ross Cerny for Plaintiff and Appellant.

Liebman & Reiner and John Reiner for Defendant and Respondent.

**OPINION**

**HASTINGS, J.**—The sole issue in this appeal is whether The Hertz Corporation, a self-insurer, can be held to the same standards of an insurance

company as required by Insurance Code sections 790.01 and 790.03, subdivision (h), *infra*.[1]

The Hertz Corporation (Hertz), defendant and respondent, was granted a summary judgment in an action filed by Gayle Nathanson, plaintiff and appellant (appellant). Appellant was injured in an automobile accident with a vehicle owned by Hertz and rented to one David Cuyler (Cuyler). Appellant's vehicle was rear-ended by Cuyler on a freeway causing injury to appellant. Cuyler had rented the automobile that he was driving from Hertz. Pursuant to the automobile rental agreement between Hertz and Cuyler, Hertz agreed to provide liability coverage for Cuyler if he negligently caused personal injury or property damage to another while operating the rental car.[2] Based on medical bills of $2,234.50 and assorted additional damages of $605, a demand of $15,000 was tendered to Hertz by appellant's attorneys. Eventually, Hertz offered a sum of $4,500, forcing appellant to institute litigation. The final settlement figure was $9,000 but this amount, according to appellant, was forced upon her by Hertz's economic superiority. Subsequently, the present action was filed by appellant against Hertz alleging that under the rental agreement Hertz was engaged in the insurance business and therefore was subject to the provisions of sections 790.01 and 790.03, subdivision (h), allowing damages for breach of implied covenant of good faith and fair dealings.[3] Appellant's first cause of action sets forth in detail

---

[1] Unless specified to the contrary all statutory references are to the Insurance Code.

[2] Paragraph 9 of the agreement entitled "Liability Coverage" states the following: "Lessor provides liability coverage for Customer and any operator authorized by Lessor in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy, as required in the jurisdiction in which the Vehicle is operated, against liability for bodily injury, including death (limits $100,000 each person, $300,000 each accident) and property damage (limit $25,000), arising from use of Vehicle as permitted by the Agreement. . . . Lessor warrants that to the extent permitted by law, the liability coverage described in this Paragraph 9 is primary as respects any other insurance available to Customer or any Authorized Operator . . . COVERAGE IS VOID IN MEXICO . . . [C]ustomer shall report all accidents to Lessor. Customer and Authorized Operator will deliver all papers of any kind received by either party relating to any accident involving Vehicle while rented under this Agreement. Customer and Authorized Operator will cooperate fully with Lessor in the investigation and defense of any claim or lawsuit."

[3] Section 790.01 provides: "This article applies to reciprocal and interinsurance exchanges, Lloyds insurers, fraternal benefit societies, fraternal fire insurers, grants and annuities societies, insurers holding certificates of exemptions, motor clubs, nonprofit hospital associations, agents, brokers, solicitors, surplus line brokers and special lines surplus line brokers as well as all other persons engaged in the business of insurance."

Section 790.03, subdivision (h) reads as follows: "Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: [¶] (1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue. [¶] (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. [¶] (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies. [¶] (4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured. [¶] (5) Not attempting in good faith to effectuate

her allegations concerning Hertz's violations of section 790.03, subdivision (h). Her second cause of action is for violation of the Unfair Claims Practices Act which is also based upon the standards as set forth in section 790.03, subdivision (h). Appellant's third cause of action seeks damages for intentional infliction of emotional distress.

Hertz demurred to the entire complaint. The demurrers were overruled as to the first two causes of action but sustained as to the third. Thereafter, Hertz filed its motion for summary judgment alleging it was a self-insurer and not an insurance company controlled by sections 790.01 and 790.03. The trial court granted the summary motion finding that no factual dispute existed because the issue had been decided by *Richardson* v. *GAB Business Services, Inc.* (1984) 161 Cal.App.3d 519 [207 Cal.Rptr. 519].

■ It appears *Richardson* is the first and only case involving self-insurers on this issue. Richardson was injured in a Safeway Store and successfully prosecuted a personal injury claim against Safeway. He then filed suit against Safeway and G.A.B. Business Services, Inc., the independent insurance adjuster retained by Safeway, seeking to recover additional damages alleging violation by defendants of section 790.03, subdivision (h). The complaint alleged that Safeway was a self-insurer in a dollar amount in excess of the amount relevant to the claim, therefore, it was in the insurance business to the extent that it adjusts and resolves claims made for bodily injury and property damage within the dollar amount of that self-insurance.

---

prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. [¶] (6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering *substantially less than the amounts ultimately recovered in* actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered. [¶] (7) Attempting to settle a claim by an insured for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application. [¶] (8) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, his representative, agent, or broker. [¶] (9) Failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made. [¶] (10) Making known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration. [¶] (11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information. [¶] (12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. [¶] (13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement. [¶] (14) Directly advising a claimant not to obtain the services of an attorney. [¶] (15) Misleading a claimant as to the applicable statute of limitations."

The trial court sustained Safeway's general demurrer to the complaint without leave to amend and entered a judgment of dismissal. Richardson appealed. The appellate court noted that the central issue was whether section 790.03 was applicable to self-insured (not insured) defendants. The Court of Appeal, Fifth District, held that Safeway, as a self-insurer, was not "engaged in the business of insurance," therefore, it could not be held to the standards required by the section.

The court, in reaching its decision, reasoned as follows: "Insurance" is defined by Insurance Code section 22 as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Essential to insurance is the shifting of the risk of loss to another. The court stated: "It is apparent on the face of the complaint that there is no insurance contract and no insurance company involved in this case. The allegation of self-insurance, which is equivalent to no insurance, is repugnant to the concept of insurance which fundamentally involves shifting to a third party, by contract, for a consideration, the risk of loss as a result of an incident or event. In the instant case the liability for the injury to plaintiff was shifted to no one. It remained with Safeway the very entity that caused the injury. . . ." (*Richardson,* at p. 523.) "It appears to us the actionable wrong of 'bad faith' contained in section 790.03 is a codification of the earlier tort of bad faith, which historically is a breach of the duty of good faith, fair dealing which is applied in every contract. [Citations.] Section 790.03 merely enumerates those practices which are actionable and extends the cause of action to third party claims, such as a third party's tort claim against a liability insurance carrier for a tortfeasor. Thus, the insurance contract itself is the basis for holding insurance companies and those engaged 'in the business of insurance' to a higher standard when negotiating and settling claims." (*Ibid.* at p. 524.) In conclusion on this issue, the opinion states: "Plaintiff's policy arguments are more properly addressed to the Legislature than to this court." (*Ibid.* at p. 525.)

There are significant distinctions between the Safeway self-insurance operation and Hertz's. Safeway self-insures against its own negligence[4] and no contractual agreement exists between it and its customers of any kind. Hertz, on the other hand, by contract is agreeing to protect its rental customer against *his or her* negligence that causes damage to a *third person.* To support its argument that Hertz is engaged in the insurance business, appellant relied upon the following undisputed facts in opposition to Hertz's motion for summary judgment: The rental agreement included a contract of

---

[4]Hertz claims it is in a similar manner insuring itself because of its statutory $15,000/30,000 exposure as owner of the vehicle. This argument overlooks the fact that the coverage it is offering its customer far exceeds its statutory exposure.

indemnity; appellant's claim for damage arising from the accident with Cuyler were included in the liability coverage provided by Hertz up to bodily injury of $100,000 per person, $300,000 per accident, and $25,000 per accident for property damage; Hertz regularly issues written contracts of liability insurance to its drivers pursuant to the rental agreement; some consideration for this coverage is probably added to the car rental;[5] Hertz requires its renters to notify it of any accidents occurring while they operate the insured vehicles; Hertz investigates the claims made by injured individuals against its renters and uniformly sets aside money as a "reserve" for the payment of the claims of these injured individuals against its renters; Hertz hires attorneys to compromise or litigate the claims of the insured individuals against its renters with the express purpose of limiting the amounts of money which would be paid by the defendants to the injured individuals. Hertz did defend Cuyler in appellant's action against him. The employee deposed testified that Hertz's practices with respect to investigating claims, setting aside reserves and hiring attorneys do not differ from the practices of other insurance companies for which he had worked.

Hertz countered appellant's declarations by disclaiming it was an insurance company, that it wrote insurance policies, or charged insurance premiums. It admitted it was "self-insured" and relying on *Richardson,* argued it was not subject to section 790.03.

We have no quarrel with *Richardson* under the facts of that case. Safeway is clearly a typical "self-insurer" in that it is using its own resources to pay damages caused by its own negligence. We do not believe, however, that it should stand for the broad principle that all self-insureds can escape liability under section 790.03 under facts similar to our present case. ██ ██ █ Section 108 defines liability insurance as "Insurance against loss resulting from liability for injury . . . suffered by any natural person, or resulting from liability for damage to property, or property interests of others . . . ."[6] Section 790.01 (fn. 3, *supra*) identifies insurance companies covered by the section and ends by including "*all other persons engaged in the business of insurance.*" This language was considered in the recent case of *Davis* v. *Continental Insurance Co.* (1986) 178 Cal.App.3d 836 [224 Cal.Rptr. 66], which had to determine whether an insurance

---

[5]In deposition testimony, an employee of Hertz was asked this question, "Would it be correct to state that the protections provided by virtue of paragraph 9 are a part of the package of rights which the renter gets when he pays the sum called for by the rental agreement?" The answer was "Yes."

[6]Appellant concedes that Hertz is not authorized by the California Insurance Commissioner to act as a class 8 (liability) insurer but argues, and we agree, this is not a requisite to her maintaining an action against Hertz under section 790.03. (See *People* v. *United National Life Ins. Co.* (1967) 66 Cal.2d 577 [58 Cal.Rptr. 599, 427 P.2d 199].)

adjuster is engaged in the business of insurance and held to the same standards required under section 790.03, subdivision (h). It stated that the above quoted language is not meaningless surplusage which is a construction which should be avoided if possible. It noted that the doctrine of *ejusdem generis* of statutory construction applies, which provides "'that where general words follow specific words in an enumeration, the general words are construed to embrace things similar in nature to those things enumerated by the preceding specific words.'" (*Davis,* at p. 839.) The court then held that if a person or business is engaged in the business of insurance it is covered by section 790.01. (*Ibid.* at p. 841.)

*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 890 [153 Cal.Rptr. 842, 592 P.2d 329], states that section 790.03 permits a plaintiff injured by the negligence of an insured to bring an action against the negligent party's liability insurer for refusal to attempt a prompt, fair, and equitable settlement of plaintiff's claim. Paragraph 9 in the agreement between Hertz and Cuyler states that Hertz agrees to provide liability coverage for the customer "with the standard provisions of a basic automobile liability insurance policy." As delineated earlier in this opinion, appellant, to our satisfaction, established that Hertz is collaterally and substantially engaged in the business of insurance as it relates to its own rental customers. By reason of Paragraph 9, a Hertz customer's reasonable expectation is that Hertz has provided him or her with a standard liability policy. He or she is unconcerned with whether Hertz is self-insured or obtains the policy from an insurance company.[7] However, Hertz for its own reasons has opted to become a self-insurer which performs substantially as an insurance company for its own customer. If Hertz had covered Cuyler by an insurance policy with an insurance company, appellant could have held that company to the standards required by section 790.03. Certainly, the strong public policy behind the provisions of section 790.03, subdivision (h), to encourage fair and prompt settlement of tort claims should be the same when Hertz is the insurer acting in the place of an independent insurance company.

In *General Ins. Co.* v. *Mammoth Vista Owners' Assn.* (1985) 174 Cal.App.3d 810 [220 Cal.Rptr. 291], a property owners' association (Mammoth) by cross-complaint sought damages pursuant to section 790.03, subdivision (h), against General Insurance Co. of America that had issued Mammoth a surety bond. General contended that there was a traditional difference between suretyship and liability insurance, therefore, it was not among the classes of business that the Legislature intended to regulate. In

---

[7]Hertz conceded that it could contract with an insurance company to carry its customers' coverage under the terms of paragraph 9 if it did not choose to handle the coverage as a self-insurer.

disagreeing with General the court noted the broad definition of insurance in section 22[8] and said, "One who undertakes to indemnify another by insurance is the 'insurer' and the person indemnified is the 'insured.' (Ins. Code, § 23.) '*All* insurance in this State is governed by provisions of this Code.'" (Italics in original, *General Ins. Co., supra,* at p. 824.) ██ ██ ██ ██ ██ Although Hertz is a self-insurer, it is by the terms of its own agreement the insurer and its customers the insured.[9] It is engaged in the liability insurance business in a substantial, although not exclusive manner and is subject to the provisions of section 790.03, subdivision (h).

The summary judgment is reversed.

Feinerman, P. J., and Eagleson, J., concurred.

A petition for a rehearing was denied July 29, 1986, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied October 16, 1986.

---

[8]Also see 61 Ops.Cal.Atty.Gen. 214 (1978), citing other cases that hold that businesses other than insurance companies can be engaged in the insurance business.

[9]Vehicle Code section 16053 authorizes the Department of Motor Vehicles to issue a certificate of self-insurance to applicants who have more than 25 vehicles registered in their name. It can authorize applicants to act as self-insurers for either property damage or bodily injury or both. Hertz as a recipient of such a certificate cliams this section exempts it from the provisions of section 790.03. We disagree. The section simply recognizes certain large enterprises can be self-insured. It does not state, or even suggest, that self-insurers operating like Hertz can escape the provisions of section 790.03.