Claudia McCLAIN, as Trustee for the heirs and next of kin of Michelle Elizabeth McClain, decedent, petitioner, Appellant,

v.

Bridget J. BEGLEY, petitioner, Appellant,

Christine S. Meyers, Defendant,

Altra Auto Rental, Inc., a division of Agency Rent–A–Car, Inc., Respondent.

and

ALTRA AUTO RENTAL, INC., A DIVISION OF AGENCY RENT–A–CAR, INC., Respondent,

v.

FIREMEN'S FUND INSURANCE COMPANY, Defendant,

Allstate Insurance Company, petitioner, Appellant.

No. C1–89–2206.

Supreme Court of Minnesota.

Feb. 15, 1991.

Eric Magnuson, Andrew M. Walsh, Rider, Bennett, Egan & Arundel, William M. Hart, R. Gregory Stephens, Meagher & Geer, Minneapolis, for appellants.

Scott W. Johnson, James A. O'Neal, Paul W. Heirling, Faegre & Benson, Bonita J. Girard, Bassford, Hecht, Lochhart & Mullia, Minneapolis, for respondents.

YETKA, Justice.

This case is here on appeal from the court of appeals, which reversed summary judgment awarded by the trial court on motion of plaintiff McClain. We reverse the court of appeals and reinstate the judgment of the trial court.

Petitioner McClain brought an action against Altra Auto Rental, Inc., Bridget Begley, and Christine Meyers for the wrongful death of her daughter, Michelle McClain. The death resulted from a car accident involving a car rented by Michelle McClain, Begley and Meyers from Altra. Altra insured the rental car through a plan of self-insurance under the no-fault act. Allstate insured Begley, the driver of the rental car at the time of the accident, through her parents' liability policy. After McClain commenced suit, Altra brought a declaratory judgment action against Allstate to determine priority of coverage.

In January 1988, McClain moved for partial summary judgment, claiming that Altra's self-insurance plan provided primary coverage to the extent of the $500,000 liability limits stated on the certificate of insurance. The motion was granted on April 7, 1988. Altra's petition for discretionary review was denied by the court of appeals. Thereafter, the parties stipulated to damages and the entry of judgment with the express understanding that Altra would appeal the summary judgment decision.[1]

The court of appeals reversed the trial court, holding that, in the absence of express liability coverage limits in a self-insurance plan, a self-insurer is liable only for the statutory minimum amount of coverage. *McClain v. Begley*, 457 N.W.2d 230 (Minn.App.1990). Respondents McClain and Begley appealed. This court granted respondents' petition for review.

This case arises from an automobile accident on March 30, 1986, in Missouri. Michelle McClain, Bridget Begley, Christine Meyers, and Shannon Murphy, all college students, planned a spring-break trip to Padre Island, Texas. Prior to the trip, Murphy contacted Altra about renting a car. An agent of Altra told Murphy that, to qualify for the least expensive rate, she must rent the car as a replacement for an insured, but out-of-service car. Murphy told the agent that McClain had an out-of-service car insured through Firemen's Fund Insurance.

On March 21, 1986, the Altra agent delivered the car to Murphy and Meyers. Meyers signed the rental contract which stated that Altra did not provide liability coverage on the car and that the car was to be insured by the lessee. A few days after the rental contract was signed, the agent filled in the rental form with a fictitious policy number, agent, and agency phone number. On March 30, 1986, as the women were returning from the trip, Begley fell asleep at the wheel and collided with a car parked on the shoulder of an interstate in Missouri. McClain was killed in the collision.

Altra insures its cars through a plan of self-insurance. As a self-insured entity, Altra completed and filed the forms developed by the Department of Commerce. One of the forms included a question and an answer which we repeat as follows:

12. List all excess insurance applicable to motor vehicle accidents, with name(s) of insurer(s), policy number(s) and limits of liability.

Lexington Insurance Company

Policy No. 552 8742

Effective: 12–31–86/87

Amount of Insurance: $2,500,000 in excess of $500,000 S.I.R.

[Self-insured Retention]

The above question and answer was part of a form entitled "REQUEST FOR EXEMPTION FROM INSURING LIABILITIES UNDER THE MINNESOTA NO–FAULT AUTOMOBILE INSURANCE ACT."

The parties to the lawsuit entered into a stipulation which, in substance, provided the following: Altra owned the car in

---

1. The parties stipulated to damages of $155,000, noting that if the summary judgment decision is reversed, then Altra will pay the statutorily mandated amount, $30,000, and Allstate will pay the limit of its secondary liability, $100,000. Thus, were the summary judgment decision reversed, McClain's estate would be uncompensated for $25,000.

which McClain was killed. The negligence of Begley, the driver, was the sole cause of McClain's death. The total damages for the death are $155,000. If the trial court orders are upheld on final appeal, Altra will pay $155,000 to plaintiff. If Altra's obligation is limited to the statutory minimum, Altra will pay $30,000 and Allstate will pay $100,000.

■ As a result of all this pre-appeal maneuvering, the parties agree and have submitted to the court the following:

1. The question of the applicability of Minnesota's car owner's responsibility act is not raised and is thus not before this court.

2. Altra sought protection of its fleet under the Minnesota no-fault act.

3. Altra, through its rental agreements, had attempted to shift responsibility for all liability coverage to the lessees of its cars and absolve itself of any liability. This has been held illegal by the Minnesota Department of Commerce.

4. Thus, the sole issue for this court to decide involves the interpretation of the no-fault insurance act, Minn.Stat. §§ 65B.41–65B.71 (1990), and its applicability to self-insurers. Interpretation of statutes is a question of law. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). The parties have stipulated to the facts and to the amount of damages. This court thus must determine whether the court of appeals erred in its application of the law to the facts of this case. This court is not bound by the decision of the court of appeals. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.*, 260 N.W.2d 579 (Minn.1977).

■ The Minnesota no-fault act imposes a duty on the owner of a motor vehicle to maintain "a plan of reparation security * * * insuring against loss resulting from liability imposed by law for injury and property damage by any person arising out of the ownership * * * of the vehicle." Minn.Stat. § 65B.48, subd. 1. The owner has the choice of self-insuring or buying an insurance policy. The act states five pur-

poses: to relieve the "severe economic distress of uncompensated victims," to prevent overcompensation, to provide prompt payment, to reduce litigation, and to correct abuses of the tort liability system. Minn.Stat. § 65B.42. The obligations imposed on self-insurers should reflect those goals.

■ Self-insurance is the functional equivalent of a commercial insurance policy. The law of workers' compensation treats self-insurers no differently than those who insure by commercial policy. The purpose of either form of insurance is to compensate victims appropriately. The certificate filed with the commissioner is the functional equivalent of an insurance policy.

While under the Minnesota no-fault statutes, Minn.Stat. § 65B.49, subd. 3(1), any insurer is required to have liability coverage of $30,000 as a minimum, Altra made a deliberate representation to the Department of Commerce to provide coverage in excess of that amount, namely, $500,000. Based on that representation and other data supplied to the Department of Commerce, Altra was accepted as a self-insured. It should thus be held to the representations that it made.

The cases and precedent cited in the briefs are simply not applicable to the unique facts of this case, for the decision in this case is based more on equitable estoppel principles than on any other.

The court of appeals is thus reversed and judgment of the trial court reinstated.

COYNE and GARDEBRING, JJ., took no part in the consideration or decision of this matter.

SIMONETT, Justice (concurring).

I join in the majority opinion but my reasoning, only sketched out here, is different.

A Minnesota car owner can satisfy the requirements of our No–Fault Act by purchasing a liability policy with limits of $30,000 for bodily injury to any one person, $60,000 for any one accident, and $10,000

property damage. Minn.Stat. § 65B.49, subd. 3(1). These limits, of course, do not limit the car owner's tort liability; a car owner remains liable for any tort exposure over the policy limits. By purchasing minimum coverage, a car owner in this state keeps his car registered, keeps his driver's license, and avoids criminal penalties. Minn.Stat. § 65B.67. Policy limits measure the amount of protection afforded the insured. Also, policy limits, whether the statutory minimum or higher, are significant in determining when other auto liability policies covering the driver (if such is the case) will come into play.

A self-insurer must approach these risk management problems a little differently than a regular policyholder. The self-insurer's exposure is its tort liability exposure, which the self-insurer may limit by purchasing an excess policy for claims against it over and above a certain amount. In relation to this excess policy, the self-insurer's underlying personal exposure is its self-insured retention. This self-insurance, by statutory definition, is a plan of reparation. Minn.Stat. § 65B.43, subd. 15. Consequently, there is no need for a self-insurer to file any detailed plan. *See Anderson v. Northwestern Bell Tel. Co.*, 443 N.W.2d 546, 549 (Minn.App.1989) ("[S]elf-insureds are not required to have the carefully worded, highly specific policy provisions, declarations and coverage limits required of insurance companies.").

Ordinarily, a self-insured retention operates much the same as stated limits in a regular insurance policy. But not necessarily. Arguably, a self-insurer may, with respect to certain persons, place limits on its self-insured retention which are lower than the self-insured retention. The self-insurer will try to do this so that if there are other auto insurance policies also covering the driver of the car, such other insurance will no longer be excess but will then apply. In this case, for example, the driver of the rented car, Bridget Begley, had her parents' auto policy affording her coverage, and the question arises as to when this other insurance takes over.[1]

In this case Altra, Inc. (the Rental Agency) purchased an excess policy with coverage of "$2,500,000 in excess of $500,000 S.I.R." (the initials refer to Self–Insured Retention). This excess policy, however, contained a "Renter's Exclusion" endorsement which appears to exclude claims such as McClain's arising from accidents while the automobile is being operated by a lessee under a rental agreement.[2]

I understand the Rental Agency's position to be that it is self-insured for claims arising when its own employees are driving its cars up to $500,000, after which the excess policy takes over for the next $2.5 million; but that as to claims arising where a lessee is operating the rented vehicle, while the personal exposure, if any, of the Rental Agency as owner of the rented car is limitless, the Rental Agency's self-insurance exposure for the lessee-operator is the minimum statutory limits under the Minnesota No–Fault Act.

The issue then becomes: To what extent, if any, does the grant of self-insurance authority to the Rental Agency provide protection to persons operating the Rental Agency's automobiles as lessee-operators?

---

1. The trial court ruled that Altra's self-insurance was primary vis-a-vis Allstate's policy issued to Bridget Begley's parents and affording coverage to Bridget Begley as driver of the rented car. This ruling was not appealed. Altra appeals only the issue of how much of its self-insured retention must be paid on the wrongful death claim before Allstate's policy must pay.

   This case has another twist. Altra, Inc., is a special division of Rent–A–Car and rents to persons whose own cars are disabled. Altra assumed that the customer's own policy would protect the customer under his or her temporary substitute coverage. Under this arrangement, Altra figured it could rent at a more competitive rate, and, indeed, the four women in this case found Altra's rental rate to be the cheapest. Unfortunately for Altra, the Commerce Department struck down this arrangement. *See* footnotes 6 and 7, *infra.*

2. Thus, while a car is out on rental, the excess policy does not provide coverage to either the Rental Agency or the lessee-operator, and the $500,000 retention figure is irrelevant. Hence the Rental Agency's self-insurance for this rental risk is unlimited except as tort law limits tort liability and as perhaps auto liability insurance policies issued to others may come into play.

It seems to me there are two possible ways in which the Rental Agency, as a self-insurer, might possibly provide coverage to its lessee-operators.

One possibility is that the self-insurer contracts with the lessee to protect the lessee the same as if *the lessee* had purchased a standard auto liability insurance policy for the rented car. Presumably the Rental Agency could place limits on this contractual coverage by so stating in the rental contract. The problem with this arrangement, however, is that the Rental Agency is a self-insurer, not an insurer. I doubt if a self-insurer is authorized to issue contracts of insurance.[3]

The second possibility is to treat the self-insurer as if it had purchased a policy of auto liability insurance for each of its vehicles with itself as the named insured. Such a policy, if purchased, would contain an omnibus clause extending coverage to permissive drivers as additional unnamed insureds.[4] This seems to me the better approach and more in keeping with the concept of self-insurance. This brings up, however, another question: Can omnibus coverage limits ever be less than the coverage limits for the named insured?

Courts in other states appear to differ on this. For example, in *Balboa Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 17 Ariz. App. 157, 496 P.2d 147 (1972), a rental car agency had purchased a liability policy with $100,000/300,000 coverage but with an endorsement limiting coverage for lessee-op-

erators to $10,000/20,000, the statutory minimum. The court held these differing limits were permissible, relying on *Rocky Mountain Fire & Cas. Co. v. Allstate Ins. Co.*, 107 Ariz. 227, 485 P.2d 552 (1971). *Compare Southern Home Ins. Co. v. Burdette's Leasing Service, Inc.*, 268 S.C. 472, 234 S.E.2d 870 (1977), where the South Carolina Supreme Court held that an auto rental agency's self-insurance covered permissive users including lessee-customers, and that the self-insurance "substitutes for an insurance policy *to the extent of the statutory policy requirements.*" *Id.*, 234 S.E.2d at 872 (emphasis added).

Wisconsin has a so-called "omnibus statute" which provides that coverage applicable to the named insured is to be extended to any person using the motor vehicle. Wis.Stat. § 632.32(3), successor to Wis. Stat. § 204.30(3) (1967). In *Smith v. National Indemnity Co.*, 57 Wis.2d 706, 205 N.W.2d 365 (1973), the car rental agency had liability insurance with coverage for itself, as the named owner insured, of $100,000/300,000; an endorsement to the policy, however, limited coverage for renters to $10,000/20,000. The Wisconsin Supreme Court held, applying its omnibus coverage statute, that the car rental agency could not have less coverage for its lessee-customers than for itself.

In *National Indemnity Co. v. Manley*, 53 Cal.App.3d 126, 125 Cal.Rptr. 513 (1975), the rental agency's liability policy con-

---

**3.** Compare *Nathanson v. Hertz Corp.*, 183 Cal. App.3d 78, 227 Cal.Rptr. 799 (1986), where Hertz, as a self-insurer, had a provision in its rental contract stating, "Lessor provides liability coverage for customer * * * in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy, as required in the jurisdiction in which the Vehicle is operated * * *." The contract then went on to specify limits of $100,000/300,000, which were more than the statutory minimums of $15,000/30,000. 183 Cal.App.3d at 80 n. 2, 227 Cal.Rptr. at 800 n. 2. The appellate court pointed out that Hertz, by contract, was "agreeing to protect its rental customer against *his* or *her* negligence that causes damage to a *third person.*" 183 Cal. App.3d at 82, 227 Cal.Rptr. at 802 (emphasis in original). The court held, for purposes of a bad faith claim against Hertz for the manner in which it settled a claim, that the higher contractually declared limits governed. The court not-

ed that Hertz was not authorized to act as an insurer, but this did not prohibit plaintiff's bad faith claim under California's Unfair Claims Practices Act.

**4.** Minn.Stat. § 65B.43, subd. 5, lists persons who are deemed an insured under a reparation plan even though not identified by name, and permissive users are not included. Apparently, however, the Minnesota Department of Commerce will not approve an auto insurance policy for sale in this state unless it contains a "permissive user" provision which extends coverage under the policy to anyone using the car with the permission of an insured. See affidavit of Assistant Commissioner O'Malley. Whatever the value of this affidavit, I take judicial notice that auto policies issued in this state contain an omnibus clause.

tained an endorsement that it was excess over other insurance. The intermediate appellate court held that under the California Insurance Code an insurer could provide in its policy for only minimum statutory coverage for permissive users, but that in this instance the policy clause attempted to exclude permissive users from any coverage whatsoever and, hence, was void. 53 Cal. App.3d at 133, 125 Cal.Rptr. at 513. The court, therefore, ruled that permissive users would be entitled to coverage in the same amount as that specified by the policy for the named insured. *See also Globe Indemnity Co. v. Universal Underwriters Ins. Co.*, 201 Cal.App.2d 9, 17–18, 20 Cal. Rptr. 73, 78–79 (1962).

I think arguments can be made both for and against restricting omnibus coverage to minimum statutory limits in cases where a self-insurer is engaged in the business of short-term car rentals.[5] One would need, however, a better record than the one we have here to resolve this question. The record does indicate that the Minnesota Department of Commerce expects a self-insured rental agency to provide liability protection for its lessee-operators, and there is some indication that this coverage can be limited to the statutory minimum.[6]

On this record and for this case, I take the following position. The Rental Agency affords protection to its lessee-operators as if it had omnibus coverage. Car rental companies are a special case of self-insurance. The Rental Agency may limit its omnibus coverage—at least for lessee-operators—to the statutory minimum and it may do this in the rental contract. In this case, however, the Rental Agency went further and attempted to deny all omnibus coverage. This attempt was void.[7] Therefore, left in place for omnibus coverage are the same "limits" for residual liability coverage as for the named insured, *see Manley, supra*, which in this case is either unlimited or $500,000, depending on how the renter's exclusion is construed. In any event, for the purposes of this case, the Rental Agency is responsible under the stipulation of the parties to pay $155,000.

I think the $500,000 self-insured retention refers to residual tort liability, not to first party no-fault benefits, and, therefore, no-fault economic loss benefits are the statutory minimum.

KEITH, Chief Justice (concurring).

I join in the concurrence of Justice Simonett.

> The Rental Agency was given 45 days to change the wording in its rental contracts to comply with the Commissioner's decision. The record indicates that the Rental Agency did not appeal this decision but not whether it chose to comply. While the reasoning of the Commissioner is obscure, nothing in the Commissioner's decision suggests that compliance would require more than the minimum limits mandated by the No–Fault Act.

---

5. No Minnesota case deals with this issue. Unlike Wisconsin, our state has no "omnibus statute." On the omnibus clause generally, see *Dairyland Ins. Co. v. Munson*, 292 Minn. 141, 193 N.W.2d 476 (1972); *Milbank Mut. Ins. Co. v. U.S. Fidelity*, 332 N.W.2d 160 (Minn.1983).

6. In its brief the Rental Agency says it now provides the statutory minimum coverage for residual tort liability to its lessee-customers and that this action has been approved by the Attorney General. This information is not in the record and cannot be considered by us.

   Nevertheless, we do know that in the summer of 1987 (after the McClain accident), the Department of Commerce conducted an administrative hearing on the legality of the clause in Altra's rental contract purporting to place sole responsibility for liability insurance coverage on the lessee customer. In September of that year the Commerce Commissioner ruled that the Rental Agency was in violation of the No–Fault Act because "it has not provided residual liability coverage * * *" and because it attempted to "eliminate by contract the above coverages required by Minnesota law."

7. Altra's rental contract, it will be recalled, said, "If customer's insurance fails for any reason to afford coverage, customer shall be solely responsible." The administrative law judge ruled that this contract clause flatly contradicts Minnesota law which requires a car owner (except one who leases its car for 6 months or more) to be legally responsible for the car. *See* Minn.Stat. § 65B.43, subd. 4 (dealing with leased cars), and Minn.Stat. § 170.54 (the Safety Responsibility Act). Implicit in this decision, it seems to me, is that the self-insurer must provide omnibus coverage in at least the minimum statutory amounts for residual tort liability.

TOMLJANOVICH, Justice (concurring).

I join in the concurrence of Justice Simonett.