STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Appellant,

v.

UNIVERSAL UNDERWRITERS
INSURANCE COMPANY,
et al., Respondents.

No. C2–00–1851.

Court of Appeals of Minnesota.

April 24, 2001.

Review Denied June 27, 2001.

Linc S. Deter, Brett W. Olander & Associates, St. Paul, MN, for appellant.

Karen Melling van Vliet, Johnson & van Vliet, P.L.L.P., St. Paul, MN, for respondents.

Considered and decided by STONEBURNER, Presiding Judge, KALITOWSKI and SCHUMACHER, Judges.

## OPINION

STONEBURNER, Judge

The district court granted summary judgment in favor of respondent Universal Underwriters Insurance Company, finding Minn.Stat. § 65B.49, subd. 3(3)(d) (2000) did not prohibit Universal from contracting to limit its liability coverage for a permissive driver to the minimum statutory limits while providing higher limits for liability of the vehicle owner. We affirm.

## FACTS

On January 29, 1999, James Zeppelin caused an accident while driving a "loaner"

vehicle, a 1995 pickup owned by Gilleland Chevrolet. The driver of the other vehicle was injured in the accident. Appellant State Farm Mutual Automobile Insurance Company insured Zeppelin under an automobile liability policy. Respondent Universal Underwriters Insurance Company insured Gilleland under a garage policy that provided coverage to Gilleland and its agents and employees for direct or vicarious liability.

The Universal policy provides $500,000 in liability coverage for the named insureds, but contains a split-limit, step-down, or "most we will pay" provision limiting the liability coverage for permissive drivers. The policy defines "auto hazard" as "the ownership, maintenance, or use of any AUTO YOU own" and includes as insureds:

> (4) Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

The policy then provides:

> With respect to the AUTO HAZARD part (4) of WHO IS AN INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision law in the jurisdiction where the OCCURRENCE took place.

The parties agree that Universal's policy provides primary coverage for this accident, but State Farm claims the entire $500,000 limit of liability coverage for Gilleland is primary and Universal claims that $30,000 (the minimum required by Minnesota law) coverage for the permissive driver is primary, after which State Farm's policy applies, and if the victim is still not fully compensated, Universal's coverage for Gilleland is available. On cross-motions for summary judgment, the district court agreed with Universal, con-cluding that an insurer can contractually limit its liability coverage for permissive drivers to the minimum statutory limits while providing additional coverage to the vehicle's owner. State Farm appeals.

## ISSUES

1. Does Universal's policy contractually limit liability coverage for a permissive driver to the statutorily required minimum amount while providing a higher limit of liability for the owner's vicarious liability for such use?

2. Does Minn.Stat. § 65B.49, subd. 3(3)(d) (2000) prohibit an insurer from contractually providing different liability limits for a permissive driver and the owner of a motor vehicle?

## ANALYSIS

On appeal from summary judgment, this court considers (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990) (citation omitted). Because the parties do not dispute the facts, this case involves "issues of statutory and contract interpretation, which are questions of law subject to de novo review." *Hertz Corp. v. State Farm Mut. Ins. Co.*, 573 N.W.2d 686, 688 (Minn.1998) (citing *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709, 711 (Minn.1991)).

### 1. The contract effectively provides for split limits

State Farm argues that the policy language is ineffective to reach the result argued by Universal because, by its terms, it purports to limit Universal's obligation to $30,000 for any claims arising out of this accident and does not revive additional coverage for the owner after the driver's

own insurance coverage is exhausted. We disagree.

The policy language states that coverage for those who are insureds, as defined in (4) of "WHO IS AN INSURED * * * AUTO HAZARD" is limited to the minimum amounts required by law, but that limitation does not apply to sections (1), (2) or (3) of the definition of who is an insured in respect to auto hazard. Those sections include the named insured, partners, employees, contract drivers and others. The language of the policy effectively limits coverage for the class of insureds defined in (4) while preserving the higher limits for the owner and others defined in sections (1), (2), and (3) of the definition of insureds. The district court did not err in concluding that the policy clearly limits coverage for permissive drivers to the statutory minimum and that the higher limit continues to apply to the owner's vicarious liability for such use.

## 2. The No–Fault Act does not preclude split limits

■ Relevant portions of the Minnesota No–Fault Act provide that every owner of a motor vehicle that is required to be registered or licensed or is principally garaged in this state shall maintain a plan of reparation security, and each plan shall contain state limits of liability of not less than $30,000 for bodily injury to one person in any one accident. Minn.Stat. §§ 65B.48, 65B.49, subd. 3(1) (2000). A vehicle owner's liability policy is primary over a nonowned vehicle policy:

Except as provided in subdivision 5a, a residual liability insurance policy shall be excess of a nonowned vehicle policy whether the nonowned vehicle is borrowed or rented, or used for business or pleasure. A nonowned vehicle is one not used or provided on a regular basis.

Minn.Stat. § 65B.49, subd. 3(3)(d) (2000).[1] State Farm argues that Minn.Stat. § 65B.49, subd. 3(3)(d) prohibits the owner's residual liability policy from providing different liability limits for the permissive user and the owner. An insurance contract governs liability between the parties "only as long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes." *Hertz*, 573 N.W.2d at 689–90 (quoting *Streich v. American Family Mut. Ins. Co.*, 358 N.W.2d 396, 399 (Minn.1984)). Consequently, if a contract provision conflicts with a statute, it is unenforceable. *Id.* at 689.

■ This court has previously held that a self-insured owner of a motor vehicle may contractually limit liability coverage for a permissive user to the statutory minimum, while providing a higher coverage limit for the owner. *See Agency Rent–A–Car, Inc. v. American Family Mut. Auto. Ins. Co.*, 519 N.W.2d 483, 487 (Minn.App. 1994).[2] The decision in *Agency* involved a self-insured car-rental agency and the contractual limitation was contained in the rental agreement, but the analysis is not limited to self-insureds. *See McClain v. Begley*, 465 N.W.2d 680, 682 (Minn.1991) (stating self insurance is the functional equivalent of an insurance policy). We

---

**1.** Prior to enactment of Minn.Stat. § 65B.49, subd. 3(3)(d) in 1994, priority was determined by a "closest to the risk" analysis. *Hertz*, 573 N.W.2d at 691 (citing *Interstate Fire & Cas. Co. v.. Auto–Owners Ins. Co.*, 433 N.W.2d 82, 86 (Minn.1988)).

**2.** *See McClain v. Begley*, 465 N.W.2d 680, 684–85 (Minn.1991) (Simonett, J., concurring) (discussing whether omnibus coverage can ever be less than coverage limits for named insured and taking position that rental agency could limit omnibus coverage to statutory minimum in rental contract).

noted in *Agency* that Minnesota does not have an "omnibus statute," requiring coverage of the named insured to be coextensive with coverage of any other person using the insured's vehicle,[3] and that courts in states lacking such legislation have held that coverage for the named insured need not be coextensive with omnibus coverage. 519 N.W.2d at 487.

State Farm argues that Minn.Stat. § 65B.49, subd. 3(3)(d) prohibits the result reached in *Agency*.[4] *See* 1994 Minn. Laws ch. 485, § 53 (adopting Minn.Stat. § 65B.49, subd. 3(3)(d) effective Aug. 1, 1994). We disagree. The statute only directs which policy is primary and does not negate unambiguous policy language that establishes the amount of coverage applicable to various risks covered in the policy.[5]

State Farm argues that the priority statute is definitive, because a vehicle owner is required to maintain liability insurance to cover injury and property damage "arising out of the ownership, maintenance, operation or use of the vehicle," and separating coverages for the owner and the user violates the purpose of the No–Fault Act. *See* Minn.Stat. § 65B.49, subds. 1, 3(2) (2000).

The stated purposes of the No–Fault Act include:

> to relieve the severe economic distress of uncompensated victims; to prevent overcompensation; to assure prompt payment; to ease the burden of litiga-

tion; and to correct imbalances and abuses in the automobile accident liability system.

*Hertz*, 573 N.W.2d at 689 (quotations omitted). The No–Fault Act requires only a minimum amount of liability coverage to meet these purposes. *See* Minn.Stat. § 65B.49, subd. 3(1) (requiring minimum of $30,000/$60,000 coverage for personal injury and $10,000 coverage for destruction of property).

State Farm relies on decisions that, on the basis of Minn.Stat. § 65B.49, subd. 3(3)(d), found an attempt to provide liability coverage only to permissive drivers who did not have liability coverage arising from his or her own automobile policy violated the policy of the No–Fault Act. *See Hertz*, 573 N.W.2d at 690–91; *Mutual Serv. Cas. Ins. Co. v. West Bend Mut. Ins. Co.*, 599 N.W.2d 585, 588 (Minn.App.1999). In those cases, the vehicle owner was "thrusting upon the renter its responsibility to provide liability coverage." *Hertz*, 573 N.W.2d at 689; *see Mutual Serv.*, 599 N.W.2d at 588 (stating limitation of coverage shifted the burden of providing primary insurance from the owner to the user). As discussed in *Agency*, the presumptive amount of liability insurance for the permissive driver, absent any evidence of limits, was the statutory minimum prior to *McClain*. *Agency*, 519 N.W.2d at 487. After *McClain*, the presumptive amount, absent any evidence of limits, was coextensive with coverage for the owner. *Id.* Here, however, the vehicle owner com-

---

**3.** *See* Wis. Stat. § 632.32(3)(a) (2000); *Smith v. National Indem. Co.*, 57 Wis.2d 706, 205 N.W.2d 365, 368–69 (1973) (applying statute to hold invalid car-rental contract limiting liability coverage for renters to less than coverage for rental agency).

**4.** *Agency* was published on August 2, 1994, one day after the effective date of Minn.Stat. § 65B.49, subd. 3(3)(d).

**5.** This court recently indicated that Minn.Stat. § 65B.49, subd. 3(3)(d) "would seem to trigger coverage of all policies and their respective liability limits which cover such 'ownership' risks." *Johnson v. Americar Rental Sys.*, 613 N.W.2d 773, 777 n. 1 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000). This was not the issue in *Johnson*, and the comment is dicta. We do not find it persuasive.

plied fully with its statutory responsibility to provide the required liability coverage for permissive drivers. The court was not required to presume the limits, because they were clearly stated in the policy to be the minimum amount required by applicable state law. The Universal policy complies with the No–Fault Act's requirements for minimum coverage for permissive drivers.

Several states have found that, because of the freedom to contract, split limits do not violate public policy.[6] *See Bowers v. Estate of Feathers,* 448 Pa.Super. 263, 671 A.2d 695, 700 (1995) (listing states which upheld split-limit provisions); *see also Lehman Eastern Auto Rentals, Inc. v. Brooks,* 370 So.2d 14, 16 (Fla.Dist.Ct.App. 1979); *Universal Underwriters Ins. Co. v. Hill,* 24 Kan.App.2d 943, 955 P.2d 1333, 1339 (1998); *Windsor Ins. Co. v. Lucas,* 24 S.W.3d 151, 154–55 (Mo.Ct.App.2000); *Yosemite Ins. Co. v. State Farm Mut. Auto. Ins.,* 98 Nev. 460, 653 P.2d 149, 150 (1982). States which prohibit split limits normally do so because of statutory requirements. *See Smith,* 205 N.W.2d at 368–69 (citing express statutory authority prohibiting split-limit provisions); *see also Hardware Mut. Cas. Co. v. General Accident Fire & Life Assurance Corp.,* 212 Va. 780, 188 S.E.2d 218, 221 (1972) (noting statute's remedial intent prohibited split-limit provisions). No state has prohibited split limits on the basis of a statute similar to Minn. Stat. § 65B.49, subd. 3(3)(d), that makes the owner's liability insurance primary. Nothing in Minn.Stat. § 65B.49, subd. 3(3)(d) shows a clear intent by the legislature to restrict an insurer's right to freely contract for different liability limits for permissive drivers and owners so long as the minimum statutory coverage is provided. *See Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 251 (Minn.1998)

(recognizing "nothing in the No Fault Act, either explicit or implicit, * * * prohibits insurance companies from including some restrictions on liability coverage in their contracts").

The remedial purpose of the Minnesota No Fault Act is not impacted by allowing split limits. We find *Agency* controlling. Minn.Stat. § 65B.49, subd. 3(3)(d) does not void the split-limit coverages provided in Universal's policy.

### DECISION

The Universal policy language effectively provides a lower limit of coverage for the liability of a permissive driver than for the vicarious liability of the owner of a motor vehicle for such use. Minn.Stat. § 65B.49, subd. 3(3)(d) does not prohibit an insurer from contractually providing different limits on liability coverage for a permissive driver and the owner of a motor vehicle. The district court did not err in granting summary judgment to Universal.

**Affirmed.**

---

**6.** State Farm conceded at oral argument that public policy is not implicated.